OPINION
{¶ 1} Appellant Robert Hupp pleaded guilty to two counts of attempted rape in 1992. He was sentenced by the Noble County Court of Common Pleas to eleven years in prison, and was paroled in 2003. The trial court subsequently determined that he was a sexual predator, and Appellant now appeals this determination on the basis that the record does not contain clear and convincing evidence that he should be designated as a sexual predator. The record contains a somewhat guarded, but largely positive, expert psychological report about Appellant. The trial judge, though, discounted most of that report. The trial court did agree with the report's conclusion that Appellant's recovery was dependant on continued treatment during parole. The trial court determined that Appellant had not shown compliance with attending recovery programs while on parole, and subsequently designated him a sexual predator. We disagree with the trial court's conclusion primarily because the court appears to have shifted the burden of proof to Appellant to prove that he was not a sexual predator, rather than relying on the prosecutor to prove that Appellant was a sexual predator. The judgment of the trial court is hereby reversed.
 {¶ 2} On June 17, 1992, Appellant chased two 17-year old girls in Wolf Run State Park, Belle Valley, Ohio. Appellant was 27 years old. Appellant was intoxicated at the time of the attack. He had removed all his clothing, except for his hat, before or during the chase. He caught up with girls, grabbed them, and a struggle ensued. He admitted grabbing one of them on the breast. (6/18/92 Police Statement, p. 3.) Appellant also admitted that, "he had sex on [his] mind" when he attacked the two girls. (6/18/92 Police Statement, p. 3.) The girls eventually broke free and drove away in their truck.
 {¶ 3} A complaint was filed on June 17, 1992, charging Appellant with one count of attempted rape in violation of R.C. § 2907.02(A)(1)(b), which at the time was an aggravated second degree felony. A second similar complaint was filed on June 18, 1992.
 {¶ 4} On October 1, 1992, Appellant entered a guilty plea to the charges. On October 7, 1992, the Noble County Court of Common Pleas sentenced him to two indefinite prison terms of 4 to 25 years, to be served concurrently.
 {¶ 5} On November 12, 1992, Appellant filed a motion for shock probation, which was denied. On November 15, 1993, he filed another motion for shock probation. A hearing on the motion was held on December 13, 1993. The trial court noted that Appellant had attended various classes while incarcerated, including alcohol and substance abuse programs, Bible studies, and general education classes. The court, though, was disturbed by the fact that Appellant had not attended any sexual offender classes or programs, nor had he expressed any interest in attending such programs. The court then denied shock probation once again.
 {¶ 6} After this point in Appellant's incarceration, he attended numerous classes and programs for alcohol abuse and for sexual offenders.
 {¶ 7} On July 7, 2003, Appellant was granted parole.
 {¶ 8} On October 29, 2003, and November 22, 2003, Appellant met with Dr. Stuart W. Bassman, in anticipation of a sexual predator adjudication hearing. Oral hearing was waived and the matter was decided on the materials submitted by the parties.
 {¶ 9} April 20, 2004, the trial court rendered its decision based on the briefs and materials submitted by the parties, along with Dr. Bassman's expert opinion and the very limited prior court record. The court found that Appellant had committed two sexually oriented offenses and was likely to commit such offense in the future. The court noted that Dr. Bassman had not attempted to verify the answers and information provided by Appellant during the evaluation process. The court was skeptical of any information that Appellant gave to Dr. Bassman. The trial court did not believe that Appellant had ever been truly honest about how much he remembered about the night of the crime, and therefore, could not be trusted in answering any questions relating to his sexual predator adjudication.
 {¶ 10} The court was also concerned about a number of comments made by Dr. Bassman indicating that Appellant would need to continue with alcohol and sexual offender programs in order to lower his risk of repeating such crimes. The trial court then noted that Appellant had not participated in any such programs, except for one Alcoholics Anonymous meeting, since being released on parole seven months earlier. The court also recalled that Appellant had not enrolled in any sexual offender programs during the early months of his incarceration until after his motion for shock probation was denied. For these reasons the court determined that Appellant was a sexual predator.
 {¶ 11} Appellant filed an appeal on Friday, May 21, 2004, which was one day beyond the 30-day time period permitted for filing appeals set forth in App.R. 4(A). The appeal was dismissed on July 12, 2004. Appellant filed a motion for reconsideration on July 19, 2004, explaining that the appeal was sent to the Noble County Courthouse via overnight priority delivery to arrive during normal business hours on Thursday, May 20, 2004, but that the courthouse inexplicably closed at noon on May 20th. This Court reinstated the appeal on August 11, 2004.
 ASSIGNMENT OF ERROR {¶ 12} "The evidence is insufficient, as a matter of law, to prove `by clear and convincing evidence' that appellant `is likely to engage in the future in one or more sexually oriented offenses.'"
 Standard of Review {¶ 13} R.C. Chapter 2950 defines three classifications of sex offenders: sexual predators, habitual sexual offenders, and sexually oriented offenders. R.C. § 2950.09; State v. Cook (1998),83 Ohio St.3d 404, 407, 700 N.E.2d 570. The sexual predator classification is the most severe of the three.
 {¶ 14} Sexual offender classification hearings under R.C. § 2950.09
are civil in nature. State v. Gowdy (2000), 88 Ohio St.3d 387,727 N.E.2d 579, citing Cook, supra. When conducting a sexual predator hearing, a trial court may rely on information that was not introduced during the underlying criminal trial. State v. Baron,156 Ohio App.3d 241, 2004-Ohio-747, 805 N.E.2d 173, ¶ 14.
 {¶ 15} "Sexual predator" is defined in R.C. § 2950.01(E):
 {¶ 16} "(E) `Sexual predator' means a person to whom either of the following applies:
 {¶ 17} "(1) The person has been convicted of or pleaded guilty tocommitting a sexually oriented offense that is not a registration-exempt sexually oriented offense and is likely to engage in the future in one ormore sexually oriented offenses." (Emphasis added.)
 {¶ 18} According to the statute, the state must establish two facts in order for a criminal defendant to be adjudicated as a sexual predator: the defendant must have been convicted of or have pleaded guilty to committing a sexually oriented offense; and the defendant must be likely to commit future sex offenses.
 {¶ 19} Attempted rape is a sexually oriented offense as defined by R.C. § 2950.01(D)(1)(a) and (g). Appellant pleaded guilty to two counts of attempted rape. Thus, Appellant clearly meets the first of the two requirements for being adjudicated as a sexual predator. This appeal only involves a dispute about the second requirement; whether Appellant was likely to commit future sex offenses.
 {¶ 20} R.C. § 2950.09(B)(3) contains a list of factors that a trial court must consider when determining whether a defendant is a sexual predator, and most of the factors relate to the defendant's propensity to commit future sex offenses:
 {¶ 21} "(3) In making a determination under divisions (B)(1) and (4) of this section as to whether an offender or delinquent child is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 22} "(a) The offender's or delinquent child's age;
 {¶ 23} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 24} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 25} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 26} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 27} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 28} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 29} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 30} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 31} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 32} R.C. § 2950.09 does not require that each factor be met, but only that they be considered by the trial court. Baron, supra, at ¶ 14. After reviewing the factors, the court, "shall determine by clear and convincing evidence whether the offender is a sexual predator." R.C. §2950.09(C)(2)(c). Clear and convincing evidence is more than a mere preponderance of the evidence. It must produce, "in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121,122, 568 N.E.2d 1222. A judgment requiring clear and convincing evidence will not be reversed upon insufficient or conflicting evidence if it is supported by competent, credible evidence that goes to all of the essential elements of the case. State v. Schiebel (1990), 55 Ohio St.3d 71,74, 564 N.E.2d 54.
 Appellant's argument {¶ 33} Appellant argues that the trial court relied solely on his prior conviction for attempted rape in making its sexual predator determination. Appellant asserts that the prosecutor rejected Dr. Bassman's analysis and report, but did not present any alternative evidence, and in particular, did not present a separate expert opinion of its own to establish that Appellant was likely to commit future sexually oriented offenses. Appellant contends that, if the court had actually considered the factors of R.C. 2950.09(B)(3), it would have necessarily concluded that he was not likely to commit sex offenses in the future and was not a sexual predator.
 {¶ 34} It is now generally accepted that, "[t]he state has the burden to prove by clear-and-convincing evidence that the offender is a sexual predator." State v. Morales, 153 Ohio App.3d 635, 2003-Ohio-4200,795 N.E.2d 145, ¶ 6 (1st District); State v. Ward (1999),130 Ohio App.3d 551, 559, 720 N.E.2d 603 (8th District); State v.Varner, 5th Dist. No. CA-0018, 2004-Ohio-5565; State v. Harrison (Sept. 24, 2001), 7th Dist. No. 99 CA 154, at *2. The Ohio Supreme Court has come to this same conclusion in State v. Eppinger (2001),91 Ohio St.3d 158, 163, 743 N.E.2d 881:
 {¶ 35} "[A]t the sexual offender classification hearing, in order for the offender to be designated a sexual predator, the state must prove by clear and convincing evidence that the offender has been convicted of a sexually oriented offense and that the offender is likely to engage in the future in one or more sexually oriented offenses." (Emphasis in original.)
 {¶ 36} Appellant examines each factor in R.C. § 2950.09(B)(3), by and large relying on the analysis presented in Dr. Bassman's report. Appellant argues that Dr. Bassman's report is the best evidence in this case. We agree with Appellant that, "the evidence presented by a psychologist, psychiatrist, or other expert in the field of predicting future behavior may be the best tool available to the court to assist it in making these [sexual predator] determinations." Eppinger, supra,91 Ohio St.3d at 163, 743 N.E.2d 881.
 {¶ 37} According to Dr. Bassman's report, the following factors were found to indicate that Appellant had a low risk of recidivism: Appellant's age at the time of crime; Appellant's lack of prior criminal convictions, except for one DUI; the victims' ages; Appellant did not try to use drugs or alcohol on the victims; Appellant completed sex offender programs in prison; Appellant does not have any history of mental illness; Appellant had not committed any prior sex offenses; and Appellant did not display or threaten cruelty during the crime.
 {¶ 38} Appellant notes that there were multiple victims (which is a high risk factor), but points out that Dr. Bassman discounted this factor because the two victims were part of one criminal transaction and did not reflect an attempt by Appellant to seek out multiple victims in a sequential, repetitive pattern.
 {¶ 39} The only other factor Dr. Bassman mentioned that might indicate a possibility of recidivism was Appellant's prior alcoholism (this falls under the "any additional behavior characteristics" factor mentioned in R.C. § 2950.09(B)(3)(j)). Appellant notes, though, that Dr. Bassman ultimately concluded that Appellant's alcohol dependence was in remission (Bassman Report, p. 12) and that Appellant was unlikely to reoffend, as long as he continued with his recovery programs:
 {¶ 40} "While it must be understood that there is at this time no definitive way for the behavioral sciences to ascertain whether or not an individual who has acted out sexually will or will not offend again, based on an application of available information to clinically adjusted actuarial methods we would see the patient as more likely than not to avert sexual offending in the future if he continues to apply himself to a program for recovery." (Bassman Report, p. 10.)
 {¶ 41} There is no question that the trial court could have relied upon Dr. Bassman's report to support the conclusion that Appellant had been rehabilitated and was not likely to reoffend. In addition to the things already mentioned, it is evident that Appellant diligently completed many sexual offender classes and alcoholism programs, and faithfully attended AA meetings while in prison. The record does not indicate any discipline problems during incarceration. Appellant manages to hold down a full-time construction job. He has a supportive family that accepted him back after being released from prison. If the trial judge had desired to conclude that Appellant was not a sexual predator, the evidence would certainly have supported that conclusion.
 {¶ 42} The question that remains, though, is whether the prosecutor submitted any evidence that could form some basis to support the trial court's opposite conclusion. If the prosecutor provided competing evidence, the trial court would have been free to accept that evidence and to disbelieve the remaining evidence.
 {¶ 43} Appellee argues that this Court is required to use a very deferential standard of review toward the trial court's decision, while at the same time keeping in mind the underlying requirement of "clear and convincing" evidence. State v. Johns, 7th Dist. No. 03 MA 61, 2004-Ohio-5124, ¶ 8. This is a correct statement of the law, but it is incomplete. Even with the deferential standard of review described by Appellee, the state continues to have the burden of proof in sexual predator adjudications. If the state has failed to present sufficient evidence to support the adjudication, this Court is not required to defer to the trial court's decision.
 {¶ 44} It is clear from the record that Appellee did not provide the trial court with any additional evidence to make its determination other than what was already in the trial court record. The state merely submitted a legal memorandum in support of the sexual predator determination. The state did refer to Dr. Bassman's report, which was already part of the record. Any other "factual" assertions in the prosecutor's memorandum were not accompanied by citations to the record or by additional evidence.
 {¶ 45} Appellee contends that Dr. Bassman's report, overall, is not in conflict with the trial court's decision and supports that decision. Appellee points to numerous indications in the report that tend to undermine many of the positive conclusions the report made about Appellant. For example, Dr. Bassman did not independently verify Appellant's answers and responses. Appellant knew that his answers (and any conclusions based on those answers) would be used by the prosecutor if possible, to label Appellant as a sexual predator. With this in mind, Appellant may have crafted his answers to achieve a more favorable outcome. Dr. Bassman noted that Appellant was somewhat guarded in his responses and that Appellant tended to present himself in a positive light. Appellee concludes that anything in Dr. Bassman's report that is based on Appellant's responses is, therefore, not reliable.
 {¶ 46} On the other hand, Appellee relies upon parts of the report in which Dr. Bassman emphasized it was important that Appellant continue to receive treatment for both alcoholism and to prevent future sexual offenses. Dr. Bassman noted the connection between Appellant's alcoholism and his crime, and stated that, "[i]t will be essential for the patient to sustain and strengthen his resources for continuation of his recovery from alcohol abuse." (Bassman Report, p. 5.) Dr. Bassman's ultimate conclusion was that Appellant could be considered as a low risk for recidivism if he continued to actively participate in a recovery program. (Bassman Report, p. 11.)
 {¶ 47} Dr. Bassman observed that Appellant's history (based in part on Appellant's own answers and responses) put him in a medium-low risk category for recidivism, based on the Static-99 test. (Bassman Report, p. 6.) This test established that Appellant had a 9% chance of reoffending within 5 years, and a 13% chance in 10 years. (Bassman Report, p. 10.) Dr. Bassman stressed that, for Appellant to be part of the 91% that would not reoffend in 5 years, he would need to adhere to his recovery efforts. (Bassman Report, p. 10.)
 {¶ 48} Certainly, Dr. Bassman's report is not an unqualified endorsement that Appellant was at low risk for recidivism. The problem with Appellee's argument, however, is that there is nothing in the report that actually establishes — without further evidence — that Appellant presented more than a minimal risk of committing future sexually oriented offenses. Since Appellee did not present any other evidence, and did not cite to any other evidence already in the record, Appellee necessarily relied upon Dr. Bassman's report to show that Appellant is likely to commit future crimes. Dr. Bassman's report fails to demonstrate not just clearly and convincingly, but even by a preponderance of evidence, that Appellant is likely to reoffend. The report merely presents a conditional conclusion: if Appellant receives more treatment during parole, then he will be less likely to reoffend.
 {¶ 49} In order for Appellee to use Dr. Bassman's report to prove its position, Appellee must also prove that Appellant failed to adhere to a recovery program during parole. The trial court assumed that the prosecutor had proven this, but the record does not bear this out. It is true that Appellant (rather than the prosecutor) provided the trial court with a document entitled "Cambridge AA Meeting List." (2/13/04 Memorandum Contra Finding Defendant A Sexual Predator, Exh. E.) This list showed that he attended an Alcoholics Anonymous meeting on February 2, 2004. The trial court, though, interpreted this as proof that Appellant had failed to keep up with a recovery program. The trial court clearly placed the burden of proof on Appellant to show that he was complying with a detailed recovery plan, rather than requiring the state to prove that he failed. As the state provided nothing in regard to this subject, there was no real reason for Appellant to offer any information as to his recovery efforts during the parole period. The fact that Appellant actually provided some evidence to show he attended an AA meeting while on parole should not have been used to transfer the burden of proof to him, requiring him to establish more extensive recovery efforts.
 {¶ 50} Obviously, the trial court distrusted Appellant and discredited any and all information that he gave to Dr. Bassman. But the fact that the trial court distrusted Appellant does not alter the burden of proof, which rested upon Appellee. The only evidence that Appellee relied upon, namely, Dr. Bassman's report, can either be viewed as proof that Appellant was not likely to commit future crimes, or as an essentially neutral analysis of Appellant's propensity to commit future crime. It is not proof, in and of itself, that Appellant was likely to commit future sexually oriented crimes. Appellee did not provide the further evidence that would have been needed to establish its case, and thus, the trial court's adjudication was based on insufficient evidence.
 {¶ 51} The trial court erred in adjudicating Appellant as a sexual predator. We sustain Appellant's assignment of error, and the judgment of the Noble County Court of Common Pleas is hereby reversed. This case is remanded to the trial court to issue its findings and appropriate entries, based on the existing record, with respect to Appellant's classification as a habitual sexual offender or sexually oriented offender according to law and consistent with this Opinion.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.